Honorable Leif B. Erickson
Federal Magistrate Judge
Missoula Division
Russell E. Smith Courthouse
201 East Broadway, Room 370
Missoula, MT  59802

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### MISSOULA DIVISION

_____

KIM A. RICHARDS and
DONNA RICHARDS,

                                        CAUSE NO. CV 04-190-M-LBE

                    Plaintiffs,

        vs.

                                        ORDER

UNITED STATES FOREST SERVICE, an
agency of the United States
Department of Agriculture, and
LAKE COUNTY, a political
subdivision of the state of
Montana,

                    Defendants.

_____

    This matter comes before the Court on the parties' cross-motions for summary judgment.  Upon consideration of the motions, briefs and materials filed by the parties the court hereby enters the following:

### ORDER

    1.  Plaintiffs' Motion for Summary Judgment as to Counts I, II and III is **DENIED**.  The court declines to exercise pendent jurisdiction over Count 4, so the Motion for Summary Judgment as to that Count is likewise **DENIED** without prejudice.

ORDER - Page 1

2.    The Forest Service's Motion for Summary Judgment is **GRANTED** with regard to Count I and Count II.  Count I is **DISMISSED** with prejudice and Count II is **DISMISSED** without prejudice.  As regards Count III, the court finds it is without jurisdiction as there is no case or controversy to be adjudicated, hence Count III is also **DISMISSED** without prejudice.

DONE and DATED this  19th  day of January, 2006.


 /s/
Leif B. Erickson
United States Magistrate Judge


## **RATIONALE**

## **I.  PLAINTIFFS' ALLEGATIONS AND BACKGROUND**

Plaintiffs have filed this action for declaratory relief concerning the scope and/or extent of the U.S. Forest Service's rights with regard to easements it holds burdening Plaintiffs' real property and as to any rights Lake County may have with regard to those same easements, either now or as proposed.  The allegations of the Amended Complaint are as follows:

The real property at issue in this case is immediately west of the northern end of Swan Lake, Montana.  Plaintiffs and the U.S. Forest Service own real property in that area and the Forest Service holds easements on roads which cross Plaintiffs' property, known as Bug Creek Road and West Swan Shore Road.  (Am.

Compl. at ¶¶ 3, 8-9.)   The Forest Service acquired its easements in 1964.  (*Id.* at ¶ 10.)   In addition to providing access to Forest Service lands, the roads provide access to over 100 privately owned properties along the roads.  (*Id.* at ¶ 14.)   Many people use the roads to access non-federally owned properties, and the Forest Service has done nothing to limit such use of its roads.  (*Id.* at ¶¶ 15-16.)

On June 17, 2004, the Forest Service entered a "Project Agreement" with Defendant Lake County to transfer its easements over Plaintiffs' land to Lake County and to divide responsibility with respect to the cost of improvements to Bug Creek Road.  (Am. Compl. at ¶ 12.)   Lake County intends to treat the road as a county road.  (*Id.* at ¶ 13.)

Plaintiffs set forth their claims for declaratory relief in four separate counts.

In Count I, Plaintiffs seek to establish the easements are "limited in scope and purpose to providing access to the Forest Service Property and no other."  (Am. Compl. at ¶ 22.) Plaintiffs contend that legally the easements cannot be used by private parties for access to private land in the area, but that instead the easements can be used only by the public and the Forest Service to access Forest Service property.  Any use of the easements beyond mere access to Forest Service land is an

improper expansion of the scope and purpose of the easements. (*Id.* at ¶¶ 18-21.)

In Count II, Plaintiffs seek to have the court declare that the Forest Service's proposed transfer or assignment of the easements to Lake County pursuant to the Project Agreement cannot serve to expand the scope and purpose of the easements. (*Id.* at ¶ 28.) Plaintiffs argue that upon transfer to Lake County Defendants will improperly expand the scope of the easements by treating the easements as county roads with a concomitant increase in traffic. (*Id.* at ¶¶ 24-27.)

In Count III, Plaintiffs seek a declaratory judgment concluding that Lake County does not have prescriptive easement rights on the subject roads across Plaintiffs' property. (Am. Compl. at ¶ 34.) Plaintiffs contend any county or public use of the roads has been permissive through Plaintiffs' neighborly accommodation, and was not adverse or hostile to Plaintiffs' real property rights. Also Lake County's maintenance of the roads has been permissively conducted through cooperation with the Forest Service pursuant to its easement rights. (*Id.* at ¶¶ 30-33.)

Finally, in Count IV, Plaintiffs seek a declaratory judgment concluding Lake County's creation of a Rural Improvement District (RID) to provide funding for improving portions of Bug Creek Road violates Montana law. (*Id.* at ¶ 39.) Lake County only has

authority for an RID to improve a "street", yet Bug Creek Road is not a "street".  (*Id*. at ¶¶ 36-37.)

The Plaintiffs and Defendant United States Forest Service have filed cross-motions for summary judgment.[1] Plaintiffs' briefing does not entirely track their pleadings.  Although Counts I and II seek to limit the easements to allow **only** access to Forest Service lands, Plaintiffs state in their motion and briefing they do not challenge the current existing use of the roads by the public and the neighboring private landowners. (Pls.' Mot. For Summary Judgment and Br. at 5.)

Also, although Plaintiffs suggest in their supporting brief that the Forest Service has no authority to transfer its easements to Lake County, arguing "the Forest Service's attempted transfer of the Easements is void and must fail[]" (Pls.' brief in support of Mot. For Summary Judgment at 9), neither Counts I or II advance that proposition nor is that relief sought in the complaint.  Rather, Counts I and II simply seek to restrict the use of the easements after the transfers are completed.

In its Motion for Summary Judgment, the United States Forest Service seeks dismissal of this action on several grounds.  The

---

1. Counsel for the Forest Service advises Lake County joins in its summary judgment motion.  (Def.'s Mot. For Summary Judgment at 2.)  However, the Court notes Lake County has not independently filed a separate motion for summary judgment. Accordingly, the Court cannot expressly grant or deny any relief to Lake County other than as indirectly granted or denied through the Forest Service and Plaintiffs' motions.

Forest Service argues the Quiet Title Act does not provide the Court with jurisdiction over this matter.  Rather the Forest Service argues this proceeding is governed by the Administrative Procedures Act.  The Forest Service argues Plaintiffs' claims should be denied on their merits, and that Plaintiffs' issue with regard to the scope of the easements is barred by the Quiet Title Act's 12 year statute of limitations.  Finally, it argues Plaintiffs are not entitled to equitable relief regarding its ability to chip seal or otherwise improve the roads at issue in this case.

## II.  APPLICABLE LAW - SUMMARY JUDGMENT

A party moving for summary judgment is entitled to such if the party can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).  On a motion for summary judgment, this Court must determine whether a fair-minded jury could return a verdict for the nonmoving party.  *Id*. at 252.

## III.  DISCUSSION

### A.  Quiet Title Act Jurisdiction

Plaintiffs' jurisdictional allegation is based, in part, on the Quiet Title Act at 28 U.S.C. § 2409a.  However, they also

contend jurisdiction exists on the basis the United States is a Defendant in this action as provided by 28 U.S.C. § 1346.

The Forest Service argues the Court does not have jurisdiction under the Quiet Title Act to address the matters complained of in Plaintiffs' Amended Complaint.

> [T]wo conditions must exist before a district court can exercise jurisdiction over an action under the Quiet Title Act: 1) the United States must claim an interest in the property at issue; and 2) there must be a disputed title to real property between interests of the plaintiff and the United States.

*Leisnoi, Inc. v. U.S.*, 267 F.3d 1019, 1023 (9th Cir. 2001).  The first condition is met as the  U.S. claims real property interests in this case.  However, as regards the second condition the Forest Service contends there is no dispute as to title; the only dispute is as to the scope or extent of the Forest Service's easement rights.  Accordingly, the Forest Service argues since title is not at issue the Quiet Title Act does not apply.

Contrary to the Forest Service's position this Court has previously held that the Quiet Title Act does apply where "the parties dispute the scope of [an] easement[,]" held by the United States.  *Kootenai Canyon Ranch, Inc. v. United States Forest Service*, 338 F. Supp. 2d 1129, 1133 (D. Mont. 2004).  The dispute in that case was whether the scope of the Forest Service's road easement rights permitted it to make improvements to the trailhead facilities within the easement.  *Id*. at 1132-1133.  *See also Michel v. U.S.*, 65 F.3d 130, 131, 133 (9th Cir. 1995).

ORDER – Page 7

Based on *Kootenai Canyon Ranch, Inc.* the Court concludes the Quiet Title Act does apply to challenges to the scope or extent of the Forest Service's easement rights.  The challenges as to the Forest Service's rights to improve the road surfaces and to permit expanded use of the easements are both challenges to the scope of its easement rights.

Furthermore, the Quiet Title Act is a claimant's "exclusive remedy" to challenge the United States' title to real property. *Block v. North Dakota*, 461 U.S. 273, 286 (1983).  Contrary to the Forest Service's arguments, where the Quiet Title Act is found to be applicable, the Administrative Procedures Act will be found inapplicable.  *Id*. at 286 n.22.  Accordingly, to the extent the Forest Service's motion challenges application of the Quiet Title Act as the basis for jurisdiction it is denied.

**B.  Quiet Title Act - Statute of Limitations**

The Forest Service argues Plaintiffs' attempt to stop neighboring private land owners from using the roads is barred by the Quiet Title Act's 12-year statute of limitations at 28 U.S.C. § 2409a(g).  It argues the public and neighboring landowners have used the subject roads for over 40 years and any attempt by Plaintiffs to scale back that use is time barred.

As previously noted, Plaintiffs clarify that the scope of their Amended Complaint and the relief sought is limited. Plaintiffs advise that by this action they do not seek to stop

the current use of the roads.  (Pls.' Mot. For Summary Judgment
and Br. at 5.)  They do not intend to block access or cut people
off from using the roads.  (Pls.' Statement of Uncontroverted
Facts (SUF) ¶ 27.)  Rather, they just do not want traffic to
increase and they seek to prevent Defendants from paving or chip
sealing the surface of the roadway which they believe will lead
to such increase.[2]  (Pls.' Mot. For Summary Judgment and Br. at
5-6.)

Furthermore, in response to the Forest Service's statute of
limitations arguments Plaintiffs assert their specific claims are
not time barred.  They note that not until the Forest Service
entered into the Project Agreement with Lake County on June 17,
2004 did Plaintiffs have notice of the intended improvements to
the roads, the transfer of the easements to Lake County and
subsequent creation of a public road, and the resulting expansion
of the use of the roads. (Pls.' Mot. For Summary Judgment and Br.
at 2.)  Plaintiffs state their challenges stem only from the
expanded use of the easements contemplated under the Forest
Service's agreement with Lake County.  (*Id.*)

_____

2. In anticipation of these arguments to limit future
expansion of the scope of the easements, the Forest Service
suggests as a practical matter one cannot limit the "public use"
of a road to a certain number of individuals or members of the
public.  (U.S.'s Br. at 11-12.)  There is no practical way to
limit the number of members of the public who can use the road,
and then attempt to monitor such limited use through some manned
checkpoint.  (*Id.* at 12 n.1.)

Considering how Plaintiffs' positions differ in their briefing from those stated in their Amended Complaint, it is little wonder the parties are like two ships passing in the night with regard to the statute of limitations issue.  Although the Forest Service is correct the statute of limitations would bar any challenge to the scope of the Forest Service's easement rights, except to the extent of any change in the 12 years preceding the complaint, Plaintiffs state they are not challenging that expanded use of the easements.  Rather, as described above, Plaintiffs seek only to prevent what the Forest Service intends to do under the terms of the June 17, 2004 Project Agreement, which has not yet even occurred.  Plaintiffs need only bring their Quiet Title Act claim within 12 years of the date Plaintiffs "knew or should have known of the claim of the United States."  28 U.S.C. § 2409a(g).  Plaintiffs could only have known of the United States' claims or intentions challenged in this action no earlier than the June 17, 2004 Project Agreement.  Accordingly, the 12-year statute of limitations is inapplicable to the claims asserted in this case, and the Forest Service's motion with regard to the applicability of the statute of limitations is denied.

### C.  Count I - Plaintiffs' Concessions in Briefing

Plaintiffs' concession in briefing advising they do not seek to challenge the existing uses of the subject roads is

ORDER - Page 10

inconsistent with the scope of Count I as stated and renders the same moot.  Plaintiffs effectively concede existing neighboring private landowners in the area can use the subject roads, and any other current use of the roads to access non-federally owned land may continue.  Accordingly, Plaintiffs' request in Count I for a declaratory judgment that the road easements only allow access to Forest Service land, and no other land, is moot and will be denied.

### D.  Forest Service's Easement Rights

The parties readily agree the fundamental issue in this case is a legal determination establishing the extent or scope of the easements at issue and, as a matter of law, the extent and scope of the rights the Forest Service has under the easements to improve the road surface and to expand or increase both the public and private use of the easements from its current level of use.  The parties dispute the answers to those questions, and a predicate to resolution of their dispute is the determination of what law, state or federal, applies to establish or limit the Forest Service's rights.

### 1.  Applicable Law - State or Federal Law

The U.S. Supreme Court has set forth the appropriate analysis for courts to follow in determining whether federal or state law applies in determining the federal government's rights with regard to property or easements it has acquired.  *See U.S.*

*v. Little Lake Misere Land Co.*, 412 U.S. 580 (1973); *North Dakota v. U.S.*, 460 U.S. 300 (1983).  In general, state law controls with regard to defining respective real property rights.  *Little Lake Misere Land Co.*, at 591.  However, when the United States is a party to an otherwise "ordinary" or "local" land transaction it may not be automatically assumed state law applies, particularly when the land acquisition arises under federal law.  Such situations

> raise serious questions of national sovereignty when they
> arise in the context of a specific constitutional or
> statutory provision; particularly is this so when
> transactions undertaken by the Federal Government are
> involved[.]

*Id*. at 591, 592-93.  In such a case the federal courts will resolve the choice-of-law issue, and they may "formulate a rule of decision [...] according to their own standards."  *Id*. at 592, 593-94 (internal citations omitted).[3]

   The parties agree the Forest Service had authority in 1964 to acquire the subject easements pursuant to 23 U.S.C. § 205.[4]

---

   3. The same analysis applies to property rights litigated under the Quiet Title Act where the federal government acquires property under the authority of federal law.  *Lafargue v. U.S.*, 4 F. Supp. 2d 593, 599 (E.D. La. 1998).  "[T]he Court must first consider whether the matter justifies reliance on federal law."  *Id*. (citing *Clearfield Trust Co. v. U.S.*, 318 U.S. 363, 366-67 (1943)).

   4. 23 U.S.C. § 205(a) states, in relevant part as follows:

   (a) Funds available for forest development roads and trails
   shall be used by the Secretary of Agriculture to pay for the
   costs of construction and maintenance thereof, including

(Pls.' Br. in Response at 12.)  *See Scott Lumber Co., Inc. v. United States*, 390 F.2d 388, 391 (9th Cir. 1968) (concluding the U.S. Forest Service's condemnation acquisition of a road easement was for a public purpose and was authorized, in part, by 23 U.S.C. § 205).  The Court agrees the Forest Service was at least authorized, even "though not precisely governed" by 23 U.S.C. § 205 to acquire the subject easements thereby rendering the subject easements part of a federal operation implicating federal interests.  In accordance with the discussion above, the Court must establish the standard of federal law to apply to the dispute in this case.  *North Dakota*, 460 U.S. at 318.  *See also Lafargue v. U.S.*, 4 F. Supp. 2d 593, 599 (E.D. La. 1998) (concluding easements acquired by the federal government pursuant to federal law "related to an established program of government operation" and clearly implicated federal interests and, therefore, would be governed by federal common law).

Although federal common law applies in this case, the Court may consider whether it should simply adopt or borrow state law to fashion the federal common law.  *Little Lake Misere Land Co.*, at 594; *North Dakota*, at 318; *Lafargue*, 4 F. Supp. 2d at 599.  In considering whether to adopt state law the courts consider the

---

roads and trails on experimental and other areas under Forest Service administration. In connection therewith, the Secretary of Agriculture may enter into contracts with a State or civil subdivision thereof, and issue such regulations as he deems advisable.

affect the application of state law would have on governmental interests, recognizing that the Supreme Court has barred only the application of those state laws that are aberrant or hostile to federal interests. *Little Lake Misere Land Co.*, at 595-96; *North Dakota*, at 318; *Lafargue*, 4 F. Supp. 2d at 599-600.

Plaintiffs advocate for the application of Montana law on real property, especially as regards easements. As discussed below, the Court concludes none of the laws of the state of Montana, which would be applicable here if only private interests were involved, are aberrant or hostile to the federal interests at stake in this case. Accordingly, the Court will adopt Montana real property law as the applicable federal common law in this case.

## 2.   Construction of Easement Grants

The Forest Service acquired the easements at issue in 1964 from Plaintiffs' predecessors in interest. One easement, granted by the Loys and Crums, is dated June 22, 1964, and grants an easement to the "United States of America", stating in relevant part:

> [The Loys and Crums] hereby grant and convey unto the [U.S.] **and its assigns** an easement and right-of-way, for a road to be located, constructed, **improved**, used, operated, patrolled, and maintained and know as the Swan Lake road, Project Number 129, 100 feet in width with such additional width as is necessary to protect cuts and fills[.]
>
> [...]

ORDER - Page 14

Together with such reasonable rights of temporary use of the
Grantor's lands immediately adjacent to said right-of-way as
may be necessary for the construction, reconstruction,
**improvement** and maintenance of said road.

[...]

Provided, however, that if at any time this easement, or any
road constructed thereon, shall be abandoned by the United
States of America or its assigns, the rights and privileges
hereby granted shall cease and terminate and the premises
traversed thereby shall be freed from said easement as fully
and completely as if this indenture had not been made.

(Pls.' SUF, Ex. A (emphasis added).)   The document contains a

stamped statement as follows: "The acquiring agency is the Forest

Service, Dept. Of Agr."   (*Id*.)

A second easement, granted by the Anaconda Company, is dated

July 30, 1964, and grants an easement to the "United States of

America", and in relevant part states as follows:

[The Anaconda Company] does remise, release and
quitclaim unto the [U.S.] **and its assigns**, an easement and
right of way for road purposes for a road to be located,
constructed, operated and maintained [over certain described
land.]

[...]

The acquiring agency is the Forest Service, Department
of Agriculture.

It is the understanding and intention of the parties
hereto to quitclaim an easement and right of way, as
hereinabove described, for the purpose of using the same as
a road; provided, however, that if the land hereinabove
described, or any part thereof, cases to be used as a road,
then the ownership, right, title and interest herein
conveyed shall immediately revert to and revest in the
[Anaconda Company], its successors, and assigns, to the
extent that such a road may be abandoned or discontinued.

(Pls.' SUF, Ex. A (emphasis added.)

ORDER – Page 15

In determining the meaning, nature, scope, or extent of an easement the express terms of the grant control unless some exception is established, such as the existence of an ambiguity. *McCauley v. Thompson-Nistler*, 10 P.3d 794, 803 (Mont. 2000); *Van Hook v. Jennings*, 983 P.2d 995, 997 (Mont. 1999); *Leffingwell Ranch, Inc. v. Cieri*, 916 P.2d 751, 756 (Mont. 1996).  Where the "words of a deed make the scope and the location of an easement perfectly clear, there is no need for further inquiry."  *Guthrie v. Hardy*, 28 P.3d 467, 473 (Mont. 2001).  However, if the terms of the grant are general in nature and do not specifically outline the scope of the use, then the scope

> need only be such as is reasonably necessary and convenient for the purpose for which it was created.  It is sometimes held ... where the grant or reservation of an easement is general in its terms, that an exercise of the right, with the acquiescence and consent of both parties, in a particular course or manner, fixes the right and limits it to that particular course and manner.

*Leffingwell Ranch, Inc.*, at 757 (quoting *Strahan v. Bush*, 773 P.2d 718, 720 (Mont. 1989)).  In such a case, what may be reasonably necessary and convenient in light of the easement's intended purpose "is determined with a view to the situation of the property and the surrounding circumstances."  *Guthrie*, 28 P.3d at 475.

### 3.   Improvements and Expanded Use of Easements

Relevant to this case is the law regarding permissible improvements that can be made to an easement and the permissible

increase in use of an easement that can be made.  In general, as
long as the use of an easement does not increase the burden on
the servient estate, the owner may make changes or improvements
within the easement that do not affect the burden on the servient
estate.  *Shammel v. Vogl*, 396 P.2d 103, 109 (Mont. 1964).  See
also *Leichtfuss v. Dabney*, 122 P.3d 1220 (Mont. 2005) (holding
the owner of an easement cannot modify the use of the easement in
such a way so as to increase the burden on the servient
tenement).  *Id*. at 1227, 1232-33, and *Laden v. Atkeson*, 116 P.2d
881, 884-85 (Mont. 1941).  In *Leichtfuss* the court noted the
easement owners had "improved" the easement road (*Leichtfuss*, at
1223), but concluded that despite those improvements the
"character and extent of the use of the easement" remained
unchanged and, therefore, did not increase the burden on the
servient estate.  *Id*. at 1233.  Improvements to a road easement,
in and of themselves, are not "offensive to the servient rights
at stake[.]"  *Guthrie*, 28 P.3d at 473.  An easement holder has
the right and duty to maintain and repair a road easement.
*Guthrie*, at 477.

Based on the foregoing law, the Forest Service's intended
chip sealing or paving improvements to the roads, in and of
themselves, are not impermissible.  The question then becomes
whether chip sealing or paving will result in an impermissible
increased burden on the servient estate.

ORDER - Page 17

The Montana Supreme Court has stated as follows:

> [N]o use may be made of the right-of-way different from the use established at the time of the creation of the easement so as to burden the servient estate to a greater extent than was contemplated at the time the easement was created.

*Lindley v. Maggert*, 645 P.2d 430, 432 (Mont. 1928).  The use of an easement may not be expanded by using the easement to access additional property acquired by the owner of the dominant tenement subsequent to the grant of the easement.  *Leffingwell Ranch, Inc.*, 916 P.2d at 758.

Plaintiffs suggest that either upon transfer of the easements to Lake County, through the Forest Service's own allowance, or following improvements made to the roads, the resulting increase in use of the roads will impermissibly increase the burden on Plaintiffs' servient estate.  They complain that inevitably further development will occur and the roads will be used to access those additional developments.

Although Plaintiffs are concerned about the potential increase to the burden on their servient estate, the Court finds they have not sufficiently supported their concerns with any actual evidence of an increased burden.  Plaintiffs simply assert, without factual support, that "[p]aving the road will open the area to extensive development."  (Pls.' Mot. For Summary Judgment and Br. at 5.)  The assertion is based only on Mr. Richards' affidavit testimony stating that "[o]nce the roads are paved, I fully expect additional use for travel to private

ORDER – Page 18

properties, subdivisions, and other unauthorized use of the USFS Easements." (Pls.' SUF, Ex. F. at ¶ 14.)  Plaintiffs "strongly believe that the inevitable future subdivision and development which will arise from the paving of the road will irrevocably change the character" of their property.  (Pls.' Mot. For Summary Judgment and Br. at 5-6.)

        Although it is clear an increase in the burden on the servient estate is not permitted under the law, "[t]he Court cannot declare that the proposed use will be inconsistent with the [proper use of the] easement on the basis of speculation as to possible future uses." *Lindley*, 645 P.2d at 432.  The court cannot assume the burden will increase. *Leichtfuss*, 122 P.3d at 1233.  Rather, the servient owner must come forward with actual evidence of the increased burden. *Id.*  It is already clear that the easement has been, and is, used not only to access Forest Service property but also numerous private properties.  As Plaintiffs have conceded here, at the time the easements were granted to the Forest Service it would clearly have been contemplated that not only Forest Service employees, but also persons with whom the Forest Service contracted as well as the public in general would be traveling over the roadway constructed on the easement to access Forest Service lands.  I believe it safe to add that the parties executing the original easements would have reasonably anticipated that the extent of that use by

the public would probably continue to expand as more people, like
Plaintiffs, moved to or "discovered" the area.  It is further
clear that at the time the easements were granted to the Forest
Service it had a policy of allowing access over its lands to
private landowners.  Absent limiting language in the easements,
which the court finds does not exist, it is questionable whether
Plaintiffs could ever make any showing of an increased burden on
the subservient tenement not contemplated at the time the
easements were granted.  Certainly based on the affidavits
submitted by Plaintiffs, where the only claim is that chip
sealing the road and/or transferring it to the county is apt to
cause an increased use, the Plaintiffs have failed in their
burden as it is only pure speculation on their part.

Based on *Lindley* and *Leichtfuss*, Plaintiffs' motion for a
declaratory judgment preventing the Forest Service or Lake County
from making the proposed improvements to the road, including chip
sealing, based on their speculation that it will result in an
increase to the burden on their servient estate is denied as
speculative and unsupported by any evidence.

### 4.   Count III - Lake County's Prescriptive Easement

In Count III Plaintiffs allege simply that "Lake County has
claimed a public prescriptive easement along the route of Bug
Creek Road."  (Pls.' Am. Compl. ¶ 30.) Plaintiffs seek a
declaratory judgment that Lake County does not have a public

ORDER - Page 20

prescriptive easement.  In its answer Lake County denies the allegations of Count III, thereby disclaiming a public prescriptive easement.  Plaintiffs' motion for summary judgment thus seeks adjudication of a nonexistent dispute.

The federal Declaratory Judgment Act allows a party to request that a federal court declare the respective "rights and other legal relations" between two parties, but only in a "case of actual controversy[.]"  28 U.S.C. § 2201(a).  "[A] case of actual controversy" is a condition precedent to subject matter jurisdiction and the availability of declaratory relief.  *Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 887 (Fed. Cir. 1992) (citing *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 239-41 (1937)).

As a threshold question the issue of whether a controversy exists involves consideration of whether a matter is ripe for review.  *Thomas v. Anchorage Equal Rights Commission*, 220 F.3d 1134, 1138 (9th Cir. 2000).  The courts should avoid "premature adjudication" of hypothetical disputes and abstract disagreements.  *Id.*  The issues presented must be "'definite and concrete, not hypothetical or abstract.'"  *Id.* at 1139 (quoting *Railway Mail Association v. Corsi*, 326 U.S. 88, 93 (1945)).

Not only does Lake County deny it claims a prescriptive easement, but Plaintiffs have not pointed to any evidence to the contrary.  At most, then, in the absence of any definite or

ORDER - Page 21

concrete evidence to support their allegation, Plaintiffs' claim under Count III can be viewed only as hypothetical or abstract. In the absence of an actual case or controversy regarding a public prescriptive easement by Lake County over lands belonging to Plaintiffs the Court is without jurisdiction.

Plaintiffs also contend the Court could enter a declaratory judgment under Count III against the Forest Service.  However, Count III simply seeks a declaration that "Lake County", not the Forest Service, is without prescriptive easement rights.  The Forest Service does not have standing to assert Lake County's alleged prescriptive easement rights nor can those rights be adjudicated based on any resolution between Plaintiffs and the Forest Service.

Accordingly, Plaintiffs' motion for summary judgment on Count III is denied and the same is dismissed without prejudice.

### E.  Count IV - Lake County's RID

Plaintiffs move for summary judgment declaring Lake County does not have statutory authority to create a Rural Improvement District (RID) for the roads the Forest Service intends to transfer to it.  State law allows for the creation of a special improvement district to make improvements to a "street" (Mont. Code Ann. § 7-12-4102(2)(c)), but Plaintiffs argue the roads at issue here are not "streets" as defined under Mont. Code Ann. § 7-12-4101(11).

ORDER - Page 22

Lake County has not responded to Plaintiffs' motion on this issue.  In its response the Forest Service argues the Court should not exercise (supplemental) jurisdiction over this claim, and should dismiss it without prejudice.

The jurisdiction statute at 28 U.S.C. § 1367 provides that where a district court has original jurisdiction in a civil action it shall also have supplemental jurisdiction over other claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy... ."  28 U.S.C. § 1367(a).  However, the district court may decline to exercise supplemental jurisdiction for various reasons stated in the statute.  28 U.S.C. § 1367(c). "Whether to exercise pendent personal jurisdiction is committed to the sound discretion of the district court." *CE Distribution, L.L.C. v. New Sensor Corp.*, 380 F.3d 1107, 1113 (9th Cir. 2004).

The question of when it is appropriate to exercise supplemental jurisdiction is addressed in *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966).

> It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right.  [footnote omitted]  Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them[.]  [citation omitted]  Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.  [footnote omitted]  Certainly, if the

federal claims are dismissed before trial, even though not
insubstantial in a jurisdictional sense, the state claims
should be dismissed as well.  [footnote omitted]  Similarly,
if it appears that the state issues substantially
predominate, whether in terms of proof, of the scope of the
issues raised, or of the comprehensiveness of the remedy
sought, the state claims may be dismissed without prejudice
and left for resolution to state tribunals.  There may, on
the other hand, be situations in which the state claim is so
closely tied to questions of federal policy that the
argument for exercise of pendent jurisdiction is
particularly strong.

Pendent jurisdiction need not be exercised in every case in
which it is found to exist.  *Medrano v. City of Los Angeles*, 973
F.2d 1499, 1506 (9th Cir. 1992).  In addition to the reasons set
forth in 28 U.S.C. § 1367(c) which provide a basis for declining
to exercise supplemental jurisdiction, the Court has discretion
to weigh "other considerations" (*Forsberg v. Pacific Northwest
Bell Tel. Co.*, 840 F.2d 1409, 1421 (9th Cir. 1988)), and "other
compelling reasons" in exceptional circumstances (28 U.S.C. §
1367), and it may decline to exercise supplemental jurisdiction
over novel questions of state law.  *Forsberg*, at 1421.

The Court concludes Plaintiffs' challenge to the RID issue
raises novel questions under state law, and the Court finds other
considerations support the rejection of supplemental jurisdiction
over the claim.  Plaintiffs' claim, as presented, raises a
question of whether the roads at issue are "streets" under state
law.  The statute provides a "street" is one that is "dedicated
and accepted according to the law or in common and undisputed use
by the public for a period of not less than 5 years."  Mont. Code

ORDER - Page 24

Ann. § 7-12-4101(11).  As discussed above, Lake County's alleged
prescriptive use of the roads is not an actual controversy in
this case.  Accordingly, the issue would then turn to whether the
roads were dedicated and accepted under state law which the Court
finds to be novel and potentially complicated.

Plaintiffs are free to bring the claim in state court which
would be in a better position to resolve that particular dispute.
*See Medrano*, at 1506 (recognizing a plaintiff can choose to file
claims in federal court or in state court, but if filed in
federal court the plaintiff has to accept the limitations of
federal jurisdiction).

Based on the foregoing, the Court declines to exercise
supplemental jurisdiction over Plaintiff's RID claim.
Accordingly, it will be dismissed without prejudice.

The Court recognizes that the effect of the present rulings
would ordinarily result in final judgment being entered.
However, as discussed with regard to Count II, the parties
briefed a matter not pled, that is, the question of what
authority the Forest Service may have, if any, to transfer its
interest in the easements across Plaintiffs' property to Lake
County.  Rather than enter final judgment at this time, the Court
will allow Plaintiffs until February 3, 2006, to file a motion
for leave to amend to add that claim to their complaint.  L.R.
7.1(j) will, of course, apply to that motion.  Absent such
motion, final judgment will be entered.